OPINION OF THE COURT — By the
Hon. POWHATTAN ELLIS.
This cause was transferred from the superior court of chancery for the western district; the chancellor having been of counsel for the complainant. The complainant sets forth in his hill, that some time in the year 1804, Moses Lee and Joseph Montgomery were partners, in buying and selling a drove of Spanish horses; and about the same time, or in the year 1805, they closed their partnership concerns, when it was found, the said Moses was indebted to said Montgomery, in the sum of one hun= dred dollars and upwards, and some time in the month of February, 1807, the said Moses paid the said debt in full, as was afterwards acknowledged by said Joseph. It is further stated, that Moses Lee departed this life, some time in the fall of the year, 1807, and that complainant administered upon his estate. And that in March, 1809, the defendant revived his liquidated claim against the estate of deceased, and instituted his action against the representative, in the county court of Jefferson; and notwithstanding every legal exertion was made to the contrary, a verdict was rendered for the plaintiff, for one hundred and thirty dollars and costs of suit. Whereupon an appeal was taken to the superior court of Jefferson *110 county, and the judgment of’ the county court virtually affirmed, by the rendition of a second verdict in favor of the plaintiff, assessing his damages to one-hundred and forty-seven dollars. In the complainant’s bill, there is a prayer for general relief. The answer admits, that some time in the year 1803 or 180-1, the intestate of complainant, and defendant, were engaged in buying and selling a drove of Spanish horses; and that in 1807, and not in 1S05, as stated in complainant’s bill, a settlement was made, when it was ascertained, Lee was indebted to Montgomery, in the sum of one hundred and forty-seven dollars, for which he had to institute suit, and finally prosecuted his claim to a judgment, in the superior court of Jefferson county, as stated in complainant’s bill. The respondent further states and “expressly denies that the deceased, Moses Lee, or his administrator since his death, have ever paid the debt,” mentioned in complainant’s bill as having been liquidated by the deceased long anterior to his death. The defendant further states and denies all the material allegations in complainant’s bill, not herein before expressly admitted, and prays to be dismissed hence with his costs in his behalf most wrongfully expended and sustained. General replication by complainant to respondent’s answer.
The evidence introduced on the part of complainant to support the allegations set forth in his bill, is the deposition of Philip Briscoe, taken on the 17th day of February, 1817, which states, that in February or the first of March, in the year 1807, Moses Lee called at my house, and informed me that he was going down to settle with Joseph Montgomery, apd that he must call on C. S. Lee to get the money he owed to Montgomery. That on said Lee’s return, he told said deponent, he and Montgomery had settled, and that some short time afterwards, Mr Montgomery called at my house, and requested me to fetch him down a certain horse that ran at Mr. Logan’s, and stated, that he and Mr Lee had settled, rand that he had given up a horse that fell to Montgomery in the settlement, and it is the impression of this deponent, that Montgomery stated' to him, the horse was received in full of all claims he had against Lee.
The testimony introduced on the part of the defendant, is in the deposition of Gideon Higdon, taken on the 17th day of December, 1817, which states, that in December, 1808, he was present with Moses Lee *111 and Joseph Montgomery, in the town of Port Gibson, when they called on deponent to witness the settlement- Moses Lee then acknowledged to owe Joseph Montgomery one hundred dollars and upwards, but precisely how much over he could not recollect. And at the same time, said Lee acknowledged that there was a certain dunn horse belonging to them, to be given up to said Montgomery, exclusive of the above named sum of money; and soon after the said Moses Lee called at Joseph Montgomery’s, and again in my presence acknowledged the existence of the debt. From this statement of the case, it is manifest that the pretentions of complainant as set forth in his bill, and supported by the evidence of Philip Briscoe, are reduced within very narrow limits, when confronted by the answer of respondent, and the testimony of Gideon Higdon. The chancellor who granted the injunction, no doubt acted correctly, as a very strong case was presented for his consideration. When an appeal of this kind is made to the court of chancery, in the exercise of its high discrer tionary powers, based apparently upon the principles of justice and equity, the applicant will never be turned away and refused admittance into that temple, where all classes and conditions of society are permitted to seek relief, unless they wish to enter covered with their own iniquities. All the material allegations set forth in complainant’s bill, have been denied by respondent’s answer. In such a case, I believe it is a well established principle, in courts of equity, those allegations must be supported by the testimony of two credible witnesses, or facts, proved by one witness, and such collateral circumstances as will create a strong presumption in favor of the equity of complainant. How stands the case here? It rests upon the evidence of two witnesses only, the one for complainant, the other for defendant. The testimony of Briscoe does not support the allegation of the liquidation of the debt from Lee to Montgomery, but he simply states it as his impression, that the respondent agreed, upon their final settlement, to take the dunn horse which ran at Hogan’s, in full of all claims. The evidence of Higdon is of a different character altogether. He states expressly, the dunn horse which belonged to the concern, was to be given up, exclusive of the money named, for which, a suit was finally instituted, and a judgment at law obtained. The evidence of respondent, then decidedly preponderates; for the witness *112 speaks positively and directly to the terms of the agreement which took place upon the final settlement in Port Gibson, and said to have been acknowledged a second time by Moses Lee, at a subsequent period. But suppose for a moment, the evidence places the equity of complainant and respondent precisely upon the same ground, this court will'not interfere “as if one party has no more equity than the other, the law must take place.” 1 Fonb. 312, Mitford, p. 215. Again, there must notonly be a consideration as a motive for relief, but it must be a stronger consideration than there is on the other side; for if it be only equal, then the balance would incline neither way. 1, Fonblanque 342; Blake’s Chancery 405; 2, Johnston’s Chancery Reports, 203. If the evidence is to be believed, there is no consideration or inducement moving the chancellor to interfere between the parties.
Let the injunction be dissolved and' complainant’s bill be dismissed with costs.
Judges Hampton, Winston and Stocton concurred.